## Case No. 10,948.

### The PENNSYLVANIA.

[5 Ben. 253.] [1]

District Court, E. D. New York.   June, 1871.

DAMAGES BY COLLISION AT SEA—TOTAL LOSS OF VESSEL.

1. A bark was sunk by a collision with a steamship off the George's Bank, and the steamship was held liable for the damages. The bark was owned in St. John, N. B., and was bound from Glasgow to New York. Evidence was given as to her value, by witnesses from St. John and from New York. The commissioner reported, as damages, the value of the vessel "at the time and place of loss." The claimants excepted to the report on the ground, among others, that the report did not state at what port or place the value of the vessel was fixed, and that the report really gave the value by turning her gold value into currency. *Held* that, where a vessel is lost at sea, proof of her value at the time and place of her loss may in ordinary cases be made by evidence of her value at her last port of departure, or at the place of her destination.

2. The commissioner having taken the lowest value given by any witness as her value in New York, and the witnesses having given their values in currency, the exceptions must be overruled. See [Case No. 10,947].

[This was a libel by the owners of the bark Mary A. Troop against the Pennsylvania, to recover the value of the bark, which was sunk in a collision between the two vessels. A decree was rendered condemning the Pennsylvania, with a reference to a master to ascertain the value of the bark. Case No. 10,947. The cause is now heard on exceptions to the master's report.]

Benedict & Benedict, for libellants.
Beebe, Donohue & Cooke, for claimant.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

## Case No. 10,949.

### The PENNSYLVANIA.

### The A. R. GRAY.

[9 Ben. 536.] [1]

District Court, E. D. New York.   June, 1878.

COLLISION IN NORTH RIVER—TUG AND TOW—LOOKOUT.

Where a propeller came up the North river having in tow alongside a large float, extending some forty feet in front of the pilot-house of the propeller, on which were railroad cars thirteen feet high, whereby those on the propeller were prevented from seeing anything to starboard, unless at a considerable distance, and had no lookout on the front part of the float, and a collision occurred with a vessel in tow of a tug coming out from the piers: *Held*, that the propeller had no proper lookout; such a float alongside must be deemed part of the propeller, and it was the duty of the propeller to have a lookout upon it.

In admiralty.

W. W. Goodrich, for libellant.
Beebe, Wilcox & Hobbs, for the Pennsylvania.
R. P. Lee and R. D. Benedict, for the A. R. Gray.

BENEDICT, District Judge. I am of the opinion that the collision which has given rise to this action was caused solely by the fault of the propeller Pennsylvania in not maintaining a proper lookout. The business

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

of this propeller is to transport across the harbor, upon a large float, the cars of the Pennsylvania Railroad. At the time of the accident she had this float alongside on the starboard side, and it extended some forty feet beyond the pilot-house of the propeller. Upon the float were railroad cars some thirteen feet high. By this arrangement those on the propeller were wholly prevented from seeing anything to starboard, unless at a considerable distance.

There was no lookout on the forward part of the float, which, for the purposes of this action must be deemed a part of the propeller, and on which it was the propeller's duty to have a stationed lookout because of the fact that the projecting float cut off the view to starboard from the propeller. The consequence of this omission was that the pilot of the propeller proceeded on in ignorance of what was occurring off his starboard bow, and upon the assumption that the tow which he had before seen was fully made up, and was passing down outside of him. A lookout on the float would have informed him that the tug was backing, and would have warned him of danger as soon as the Levantia began to swing.

It is contended on behalf of the propeller that it must be conceded that the two tugs could not have been more tnan 400 feet apart when the Levantia took the sudden swing, but that distance gave time to stop the propeller, for her pilot swears that he could stop her absolutely in 270 feet.

It seems to be shown, therefore, that the propeller could have avoided colliding with the Levantia if the movements of the Levantia and of the Gray had been known by the pilot of the propeller, and that the sole reason of the pilot's ignorance was that being prevented from seeing off the starboard, he had no lookout upon the float to inform him as to the movements of the vessels he was approaching. He saw no movement on the part of the Levantia until she came in sight under the very bows of the float, and when it was too late to stop the headway of his boat before she struck the Levantia, doing the injury complained of.

For these reasons I hold the propeller to be guilty of fault, and responsible for the collision in question, nor can I see that the Gray is bound to share in that responsibility. The Gray was engaged in making up her tow in plain sight of all approaching vessels. In the course of that operation one boat of the tow—the Levantia—under the action of wind and tide swung off from the other boats, and thereby was thrown on the course of the Pennsylvania, but the circumstance cannot be imputed to the Gray as a fault. It is rather to be considered as a circumstance naturally attending the making up of a tow in wind and tide, and against which vessels in close proximity should be on guard.

No blame being attributable to the Levantia, she is therefore entitled to recover her damages of the Pennsylvania, and her libel as against the A. R. Gray must be dismissed with costs.